# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                                          No. 1:23-CR-270-WJ

RAUL LOPEZ,

     Defendant.

## MEMORANDUM OPINION AND ORDER OVERRULING IN PART and SUSTAINING IN PART DEFENDANT'S OBJECTIONS TO THE PRESENTENCE REPORT

**THIS MATTER** comes before the Court *sua sponte* but on the heels of Defendant Raul Lopez's sentencing on April 7, 2025. *See* **Docs. 111 & 121**. Prior to sentencing, Lopez objected to the Presentence Report ("PSR"). *See* **Doc. 114** (objecting to **Doc. 104**). Some objections were factual. Others were legal. Nearly all were without merit. Thus, for the reasons stated on the record—as well as those expounded upon herein—the Court: (1) **OVERRULES** Lopez's factual objection to the PSR's recitation of facts in paragraph 13; (2) **SUSTAINS** Lopez's factual objections to paragraphs 34, 50, and 68 of the PSR; (3) **OVERRULES** Lopez's legal objections to the enhancements under USSG §§ 3A1.2(c)(1) and 3C1.2 contained in paragraphs 12, 16, 21, 23, and 25 of the PSR; and (4) **OVERRULES** Lopez's objection to his advisory Guidelines range.

## BACKGROUND

Defendant Raul Lopez ("Lopez") entered into a plea agreement (**Doc. 100**) wherein he pleaded guilty to an Information (**Doc. 98**). The charge in the Information essentially mirrored that in the original Indictment (**Doc. 13**)—except the possession with intent to distribute was dropped

from an A-level to a B-level offense. *Compare* **Doc. 13** (". . . the offense involved 400 grams and more of a mixture and substance containing a detectable amount of fentanyl . . ."), *with* **Doc. 98** (". . . the offense involved 40 grams and more of a mixture and substance containing a detectable amount of fentanyl . . .").

The PSR calculated Lopez's total offense level as follows:

| | |
|---|---|
| **Base Offense Level:** The guideline for a violation of 21 U.S.C. § 841(a)(1) is USSG § 2D1.1. The base offense level is 34. USSG § 2D1.1(a)(5) | **<u>34</u>** |
| **Victim Related Adjustment:** Because, in a manner creating a substantial risk of serious bodily injury, the defendant or a person for whose conduct the defendant is otherwise accountable, knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom, six levels are added. USSG § 3A1.2(c)(1). | **<u>+6</u>** |
| **Adjustment for Obstruction of Justice:** The defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer; therefore, two levels are added. USSG § 3C1.2. | **<u>+2</u>** |
| **Adjusted Offense Level (Subtotal):** | **<u>42</u>** |
| **Acceptance of Responsibility:** The defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG § 3E1.1(a). | **<u>-2</u>** |
| **Acceptance of Responsibility:** The defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one additional level. USSG § 3E1.1(b). | **<u>-1</u>** |
| **Total Offense Level:** | **<u>39</u>** |

**Doc. 104 at ¶¶ 21–30**. With a total offense level of 39 and a criminal history category of IV, Lopez's correctly calculated sentencing guidelines range is 360 – 480 months incarceration.

The plea agreement is also important here, so it warrants some further discussion. In the factual admission section of the plea agreement, Lopez admitted under penalty of perjury that the possession with intent to distribute offense involved at least 40 grams of a detectable amount of fentanyl. *See* **Doc. 100 at ¶ 7a**. He also admitted that he was "the driver and sole occupant" of the vehicle. *Id.* at ¶ 7b. While driving said vehicle, Lopez admitted to: (1) getting into an accident

with a tractor trailer, and (2) striking a police cruiser. *Id.* He further admitted to being pursued by police, "knocking sealed bundles of fentanyl from the car," and resisting arrest. *Id.* Regarding the "sealed bundles," Lopez admitted to "intentionally transporting 39" bundles (bundles that he knew contained fentanyl). *Id.* **at ¶ 7c**. Finally, he agreed—and admitted—that these 39 bundles contained "approximately 39,757 fentanyl pills with a weight of 4,192 grams." *Id.*[1]

## DEFENDANT'S OBJECTIONS

Despite these admissions, Lopez raised three legal objections. First, he objected to the PSR's application of USSG § 3A1.2(c)(1) for targeting law enforcement. *See* **Doc. 114 at 1–2**. He also objected to the PSR's application of USSG § 3C1.2 for attempting to flee. *Id.* Second, Lopez objected to the drug quantity "because it improperly incorporates drug weight amounts." *Id.* **at 3**. And third, he objected to his total offense level—arguing it was improperly inflated because of the misapplication of the above-mentioned Guidelines provisions. *Id.* **at 3–4**.

Factual objections were also raised to paragraphs 13, 34, 50, and 68 of the PSR. *See* **Doc. 114 at 2–3**. Essentially, Lopez argued: (1) he did not assault law enforcement, (2) the recitation of facts from a dismissed case was "inaccurate," and (3) he does not have gang tattoos nor is he part of a gang. Some of these factual objections were sustained. Some were incorporated into the Defendant's version. *See* Fed. R. Crim. P. 32(i)(3)(B). And some were overruled.

## DISCUSSION

---

[1] This Court has previously commented on the lethality of fentanyl. *See United States v. Vallez*, 733 F. Supp. 3d 1120, 1128 n.5 (D.N.M. 2024) (Johnson, C.J.). In that case, the Court noted that "[a]n amount of fentanyl as light as a feather can kill a human." *Id.* The Court also cited to a press release from the Drug Enforcement Administration. *Id.* (citing Press Release, DEA Launches Project Wave to Stop Flood of Deadly Fentanyl (Apr. 27, 2021), available at https://www.dea.gov/press-releases/2021/04/27/dea-launches-project-wave-breaker-stop-flood-deadly-fentanyl-1 [https://perma.cc/8BF9-6Q3A]).

At sentencing, the United States argued this very point—explaining that "[j]ust one kilogram of fentanyl has the potential to kill half a million people, so it is safe to say that the drugs the defendant was transporting could have wreaked havoc in our community." **Doc. 115 at 7** (citing https://www.dea.gov/resources/facts-about-fentanyl).

## I. Legal Objections

### A. Enhancements for Assault and Fleeing — Paragraphs 12, 16, 23, and 25

First, Lopez objected to the imposition of a six-level enhancement under USSG § 3A1.2(c)(1) for assaulting law enforcement in a manner creating a substantial risk of serious bodily injury. *See* **Doc. 114 at 1–2**. He argues that he didn't mean to harm anyone. Lopez even took the witness stand at sentencing and testified that had no intent to crash into police vehicles.

In the Court's view, Lopez's testimony at his sentencing hearing was not credible. The testimony belies logic and flies in the face of the admissions made in the plea agreement. The enhancement was appropriately applied based on Lopez's driving.

On multiple occasions during the chase, Lopez drove his vehicle at law enforcement. In fact, Lopez admitted to "str[iking] the NMSP police cruiser" with his car when the police "attempted to pull m[e] . . . over." **Doc. 100 at ¶ 7b**. Moreover, the videos played at sentencing show Lopez accelerating toward the police cruiser during winter storm conditions when the road was snow packed and icy. This was done "in a manner creating a substantial risk of serious bodily injury." USSG § 3A1.2(c). And there can be no doubt that Lopez knew the individuals were law enforcement officers. USSG § 3A1.2(c)(1). The evidence presented by the United States also established that Lopez acted knowingly. *See generally United States v. Reed*, 2025 U.S. App. LEXIS 1005 (10th Cir. Jan. 16, 2025) (unpublished). Not only that, but the evidence[2] presented— in conjunction with the factual admission in the plea agreement—establishes that Lopez acted with the specific intent necessary to put a law enforcement officer in fear of serious bodily injury. *See United States v. Gonzales*, 931 F.3d 1219, 1224 (10th Cir. 2019).

---

[2] As the Court stated on the record: "The review of the video cam, the lapel video, [and] the Government's exhibit" all "establish[] that the Defendant attempted to accelerate towards the police vehicle. Therefore, the Probation Office correctly applied that six-level enhancement." **Sent'g Hrg. Tr.**

\* \* \*

Next, Lopez objected to the two-level enhancement under USSG § 3C1.2 for "recklessly create[ing] a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." *See* **Doc. 114 at 1–2**. Essentially, he argues that the snowy and slippery roads are to blame.

At sentencing, the United States' evidence demonstrated that Lopez was pursued at length. And, during that time, other people were on the road (*i.e.*, drivers besides Lopez and law enforcement). Yet despite the snow packed and icy road conditions, Lopez drove up to 60 mph at times. *See* **Doc. 104 at ¶ 12**. His vehicle even "spun out." *Id.* And by Lopez's own admission, he "lost control and crashed." **Doc. 100 at ¶ 7b**. The video evidence[3] shows that other vehicles got off the road to avoid Lopez's erratic driving. *See* **Gov. Ex. 2**. To be sure, Lopez's actions created a substantial risk of death or serious bodily injury to the other drivers on the road. *See United States v. Conley*, 131 F.3d 1387, 1389 (10th Cir. 1997) (applying § 3C1.2 when a defendant "engaged in a high-speed car chase with law enforcement officials on an icy road, passed two rolling road blocks, and attempted to ram a police officer's vehicle"); *see also United States v. Harris*, 124 F.4th 1088, 1090–92 (7th Cir. 2025) (driving at excessive speeds on a narrow road despite hazardous road conditions supported application of § 3C1.2); *United States v. Jones*, 174 F. App'x 791, 792 (4th Cir. 2006) (per curiam and unpublished) (same). As such, the enhancement was appropriately applied.

\* \* \*

---

[3] At the sentencing hearing, the Court stated: "the video establishes that that two-level enhancement was appropriately applied" because it shows "other cars moving out of the way on a snow-packed road where the Defendant was fleeing from law enforcement." **Sent'g Hrg. Tr.**

The final legal objection as to these enhancements has to do with purported "double counting" for the same conduct. *See* **Doc. 114 at 2**. But Lopez cited no legal authority for his "double counting" argument.

While there are no Tenth Circuit cases dealing with this specific objection, other courts of appeals to consider this issue have held both can be applied. *See, e.g., United States v. Bowers*, 2024 U.S. App. LEXIS 2259 (6th Cir. Jan. 31, 2024) (unpublished) (finding no "double-counting" if there is a "sensible way to distinguish the conduct that form[s] the basis for the two enhancements"); *United States v. Miner*, 108 F.3d 967 (8th Cir. 1997) (same); *United States v. Rodriguez-Matos*, 188 F.3d 1300 (11th Cir. 1999) (same); *United States v. Alicea*, 205 F.3d 480 (1st Cir. 2000) (same). In a factually similar case, the Fifth Circuit determined erratic driving supports the application of sentencing enhancements under USSG §§ 3A1.2 and § 3C1.2 when the "acts of assault against a policeman and reckless endangerment of others were temporally and geographically separate." *United States v. Gillyard*, 261 F.3d 506, 512 (5th Cir. 2001).

When, as here, there is a sensible way to distinguish the conduct there is no double counting. As explained above, the Court had evidence of two distinct sets of facts. The six-level enhancement for assaulting law enforcement in a manner creating a substantial risk of serious bodily injury under USSG § 3A1.2(c)(1) was applied because Lopez accelerated and drove his car at known law enforcement vehicles. The two-level enhancement under USSG § 3C1.2 was applied for recklessly endangering other individuals on the road. Each set of events independently warranted the enhancement applied.

### B. Drug Quantity Calculation — Paragraph 21

Based on the Drug Quantity Table, *see* USSG § 2D1.1(c), the PSR calculated Lopez's base offense level at 34. This is because the narcotics seized contained "[a]t least 4 KG but less than 12 KG of Fentanyl." USSG § 2D1.1(c)(5).

According to Lopez, using the "gross weight of the pills recovered" is improper. **Doc. 114 at 2**. In his view, because the pills "contain multiple substances," the base offense level should be reduced to 24—here, the statutory minimum. *See* USSG § 2D1.1(c)(8).

Again, in the plea agreement, Lopez admitted to "intentionally transporting . . . fentanyl pills with a weight of 4,192 grams." **Doc. 100 at ¶ 7b**. The Guidelines make clear, "the weight of a controlled substance . . . refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." USSG § 2D1.1(c), n.A. Likewise, the case law also cuts (decisively) against Lopez. As the Court stated on the record, "The Tenth Circuit has held in *United States vs. Valdez*, 225 F.3d 1137 (10th Cir. 2000), that even an amount small enough to be labeled traces are sufficient to constitute a detectable amount under § 841(b)."

This objection is wholly without merit.

### C. Total Offense Level — Paragraph 89

Based on the previous objections, Lopez argues his total offense level should be 21. *See* **Doc. 114 at 3–4**. This argument is completely without merit.

As the Court said at sentencing, the Probation Office correctly applied a base offense level of 34. *See* **Doc. 104 at ¶ 21** (citing USSG § 2D1.1(a)(5)). The six-level enhancement under USSG § 3A1.2(c)(1) was properly applied. *See id.* **at ¶ 23**. As was the two-level enhancement under USSG § 3C1.2. *Id.* **at ¶ 25**. This resulted in an "adjusted offense level" of 42. *Id.* **at ¶ 26**. Per the plea agreement (**Doc. 100 at ¶ 9b**), Lopez received three points off for acceptance of

responsibility. *See* **Doc. 104 at ¶¶ 28 & 29** (citing USSG §§ 3E1.1(a) & (b)). The end result was a total offense level of 39.

Because the Court has overruled each of Lopez's previous legal objections, the Court necessarily overrules this objection too. *Cf.* **Doc. 121 at 2** (noting this objection is subsumed into the other objections).

## II. Factual Objections

Several of the objections to the PSR fall under Fed. R. Crim. P. 32(i)(3)(B)—*viz.*, a ruling is unnecessary because the matter did not affect sentencing. For example, the dismissed charge in paragraph 34 of the PSR played no role. Nevertheless, the Court ordered the substance of Lopez's objection (**Doc. 114 at 3**) to be included in the "Defendant's Version" of the PSR. The same rings true for Lopez's objection to his alleged gang affiliation and tattoos. *See* **Doc. 114 at 3** (objecting to **PSR at ¶¶ 50 & 68**). At sentencing, the Court directed the PSR be amended to note Lopez states he is not a gang member and that his tattoo is for his favorite NFL team (the Dallas Cowboys). *See* **Doc. 121 at 2**. By order of the Court, the PSR is so amended.[4]

Finally, for the same reasons the Court overruled Lopez's legal objections, *see supra* ¶ I.A., the Court overruled Lopez's factual objections to paragraph 13 of the PSR.

---

[4] For whatever it's worth, Defendant Lopez did not object to paragraph 39 of the PSR (**Doc. 104 at ¶ 39**). In that paragraph of his criminal history, the narrative explains Defendant Lopez stated he was a gang member from Texas. *Id.* So even though the Court sustained Defendant's objection to paragraphs 50 and 68 of the PSR—to now reflect that "Defendant states he is not a gang member, and his tattoo is associated with his preferred NFL team" (or words to that effect)—the PSR still contains an unobjected to admission by Defendant that he is a gang member.

Absent a specific objection to paragraph 39, the Court properly accepted this undisputed portion of the PSR. *See United States v. Vazquez-Garcia*, 130 F.4th 891, 2025 U.S. App. LEXIS 5716, at *13–14 (10th Cir. Mar. 12, 2025) (quoting Fed. R. Crim. P. 32(i)(3)(A)); *see also United States v. Smith*, 815 F.3d 671, 679 (10th Cir. 2016) (holding the district court "was free to rely upon the PSR's description" of a state charge absent any objection); *United States v. Hooks*, 551 F.3d 1205, 1217 (10th Cir. 2009) ("If a defendant fails to specifically object to a fact in the PSR, the fact is deemed admitted by the defendant.").

### III. Sentencing Generally

#### A. Section 3553(a) Factors

The U.S. Sentencing Guidelines are the "starting point" for federal sentencing proceedings. *United States v. Zander*, 773 F. App'x 481, 482 (10th Cir. 2019) (unpublished) (quoting *Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016)). "The Guidelines anchor a sentencing: the district court sets the Guidelines range—the starting point—at the outset, and then the parties argue whether the facts and circumstances of the case call for a different endpoint." *United States v. Wireman*, 849 F.3d 956, 967 (10th Cir. 2017) (McKay, J., concurring).

Here, Lopez's correctly calculated advisory Guidelines sentencing range was 360 to 480 months based on a total offense level of 39 and a criminal history category of IV. *See* **Doc. 104 at ¶ 89** (citing USSG § 5G1.1(a)).

The United States requested a sentence at the low-end of the Guidelines, a 360-month sentence. *See* **Doc. 115**. This request was in conformity with Defendant's plea agreement wherein the United States agreed to recommend a low-end guideline sentence. *See* **Doc. 100 at ¶ 9a**. Lopez requested a 10-year custodial sentence. *See* **Doc. 113**. Unsurprisingly, the Court did not vary downward by two-thirds—as requested by Lopez and his counsel. *Cf.* **Docs. 113, 119, 120**. A sentence of ten years was not sufficient to satisfy the goals of sentencing. *See* 18 U.S.C. §§ 3553(a)(1)–(7).

On the record at sentencing, the Court indicated that it reviewed the PSR, considered the § 3553(a) sentencing factors, and found a low-end Guidelines sentence to be sufficient but not greater than necessary. A more detailed sentencing explanation wasn't required. *See United States v. Garcia*, 757 F. App'x 708, 713 (10th Cir. 2018) (unpublished). Nonetheless, the Court now expounds upon its oral pronouncement.

### 1. Nature and circumstances — § (a)(1)

Lopez intentionally possessed more than four kilograms of fentanyl. He possessed these drugs with the intention of distributing them. Even though Lopez pleaded guilty to a B-level offense in the Information, quantity-wise this was an A-level offense (the highest drug offense). Simply stated, the felony crime to which Lopez pleaded guilty is a very serious offense.

Lopez argued that his history of drug use and upbringing warranted a downward variance and/or downward departure. As the sentencing memoranda and defense counsel's argument detail, unquestionably Lopez has a history of drug addiction. He also experienced a childhood of adversity. But someone who is a mere addict doesn't end up in possession of 39,757 fentanyl pills by happenstance. To be sure, his background is mitigating (to a degree). The Court acknowledges Lopez's troubled past.[5] On balance, though, the Court concluded that Lopez is a typical drug offender whose background is not substantially different from that of other drug offenders.

For these reasons, the Court concluded it would be inappropriate to vary downward under these particular circumstances for this particular defendant. *See United States v. Sells*, 541 F.3d 1227, 1237–38 (10th Cir. 2008) (noting a district court's decision to deny a variance is reviewed through the application of the test for substantive reasonableness.); *cf. United States v. Chavez-Diaz*, 444 F.3d 1223, 1229 (10th Cir. 2006) (explaining the court of appeals lacks jurisdiction to consider whether the district court erred in refusing to grant a discretionary downward departure).

### 2. Seriousness, deterrence, and protecting the public — § (a)(2)

Drug trafficking is "a very serious offense." *United States v. Ornelas-Burrola*, 315 F. App'x 762, 765 (10th Cir. 2009) (unpublished). This is especially true when taking into account

---

[5] At sentencing, defense counsel claimed that the Court "didn't make any reference to the history and the character of Mr. Lopez outside of the criminal realm." **Sent'g Hrg. Tr.** This is incorrect. The Court considered—and commented on—Lopez's history of drug abuse as well as the adversity faced in his childhood. *See **id.***

the type and quantity of drugs at issue here—*viz.* nearly 40,000 fentanyl pills weighing over 4,000 grams. *Cf. United States v. Quintana-Torres*, 749 F. App'x 734, 737 (10th Cir. 2018) (unpublished). Like the previous sentencing factor, this one weighed against a below-Guidelines sentence.

* * *

As for the need to provide Lopez with treatment, *see* 18 U.S.C. §3553(a)(2)(D), the Court agrees that Lopez would benefit from treatment. In fact, the Court imposed supervised release conditions regarding substance abuse treatment and mental health treatment. The Court also recommended the Bureau of Prisons allow Lopez to participate in both the "Challenge Program" and Residential Drug Abuse Program ("RDAP").[6]

But Lopez's need for treatment did not apply sufficient downward pressure on the custodial sentence to merit a variance. Lopez has a long criminal history—one that includes: an escape conviction as well as evading police in the instant case. Frankly, he has demonstrated a habit of poor performance while on release. *See* **Doc. 104 at ¶¶ 35, 36, 38**. In the Court's view, Lopez's desire to obtain or maintain sobriety and undergo treatment is a very recent change—one that is undermined by his history of poor performance. The Court also questions the sincerity of Lopez's desire for treatment—particularly in light of his purported drug-trafficking at Cibola County while in pretrial custody. *See* **Doc. 104 at ¶ 47**;[7] *see also* **Doc. 100 at ¶ 29c**.

---

[6] Courts "can and should think about and discuss substance abuse treatment programs with defendants who have a substance abuse problem." *United States v. King*, 57 F.4th 1334, 1343 (11th Cir. 2023). Nevertheless, prison cannot be imposed for the purpose of treatment or rehabilitation. *United States v. Mendiola*, 696 F.3d 1033, 1041 (10th Cir. 2012); *see also Tapia v. United States*, 564 U.S. 319, 334 (2011).
    Here, the Court did not impose an above-Guidelines sentence to give Lopez enough time to participate in programming. Rather, the Court sentenced Lopez to the low-end of the Guidelines—and commented on the treatment resources available to him in prison and on supervised release.
[7] The PSR spends several paragraphs (**Doc. 104 at ¶¶ 47–49**) discussing this in-custody drug-trafficking. The Court now summarizes the relevant parts:

Suffice it to say, this subfactor did not support defense counsel's request for a below-Guidelines sentence.[8]

### 3. Avoiding unwarranted sentencing disparities — § (a)(6)

"[I]n determining the particular sentence to be imposed," the district court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *United States v. Wiseman*, 749 F.3d 1191, 1194 (10th Cir. 2014) (quoting 18 U.S.C. § 3553(a) & (a)(6)). Here, that means the Court looks to other defendants in criminal history category IV who were convicted of similar drug-trafficking crimes.

The PSR did not identify any sufficiently similar defendants. *See* **Doc. 104 at ¶ 107**. But the Court is aware of several such cases:

- *United States v. Williams*, 2023 U.S. App. LEXIS 32716 (10th Cir. Dec. 12, 2023) (unpublished): In this case, Defendant Williams was convicted for distributing methamphetamine and being a felon in possession of a firearm. His total offense level was 38 and he was in criminal history category VI. His advisory Guidelines range was 360 months to life. The Tenth Circuit affirmed the imposition of a 272-month sentence.

- *United States v. McDonald*, 43 F.4th 1090 (10th Cir. 2022): Defendant McDonald possessed between 1.5 to 5 kilograms of narcotics—and his total offense level was 37. He was in criminal history category IV. As such, his correctly calculated advisory Guidelines sentencing range was 292–365 months. His sentence of 292 months' imprisonment was affirmed.

- *United States v. Ford*, 699 F. App'x 812 (10th Cir. 2017) (unpublished): Defendant Ford possessed phencyclidine with the intent to distribute it. Based on the quantity possessed, his total offense level was calculated at 35. Ford was criminal history

---

On November 15, 2023 at approximately 1:45 PM, security staff at the Cibola County Correctional Center found suspected contraband . . . that consisted of methamphetamine, suboxone, 92 grams of fentanyl pills (weighed and determined to be 845 pills), and 102 grams of heroin, along with two cell phones and two homemade metal objects that were sharpened with handles wrapped in a sheath. The heroin was tested using the Mobile Detect Pouch and tested positive for Black Tar Heroin. The [subject] identified in the cell w[as] Lopez, Raul . . . . The contraband was all found inside of a mattress on the bottom bunk where inmate Lopez was housed.

[8] "When you look at what he's done while at Cibola County, there's just not the kind of commitment or showing that he's deserving of a sentence below the low end of the guidelines." **Sent'g Hrg. Tr.**

category IV. And his advisory Guidelines range was 292 to 365 months in custody. The district judge sentenced Ford to 292 months' imprisonment.

- *United States v. Arriola-Perez*, 137 F. App'x 119 (10th Cir. 2005) (unpublished): Defendant Arriola-Perez possessed approximately 16 kilograms of methamphetamine. His total offense level was 42 and he was in criminal history category IV. His advisory Guidelines range was 360 months to life months. His sentence of 400 months' imprisonment was affirmed.

Unsurprisingly, the Tenth Circuit is not alone in affirming within- or below-Guidelines sentences for drug-traffickers. *See, e.g., United States v. Patrick*, 2024 U.S. App. LEXIS 2972 (11th Cir. Feb. 8, 2024) (per curiam and unpublished) (affirming 292-month sentence for a defendant with "a total offense level of 39 and a criminal history of IV"); *United States v. Fleenor*, 2024 U.S. App. LEXIS 14166 (6th Cir. June 10, 2024) (unpublished) (affirming 300-month drug-trafficking sentence for a defendant with a total offense level 39 and criminal history IV); *United States v. Jimenez*, 690 F. App'x 282 (5th Cir. 2017) (per curiam and unpublished) (same).

Given the above, Lopez's within-Guidelines sentence does not create a disparity.

### B. Acceptance of Responsibility

Evidence that a defendant accepted responsibility "may be outweighed by conduct of the defendant that is inconsistent with such acceptance." *United States v. Johnson*, 20 F. App'x 775, 776 (10th Cir. 2001) (unpublished) (quoting USSG § 3E1.1 n.3). Committing additional crimes while incarcerated is antithetical to accepting responsibility. *See United States v. de Jesús*, 6 F.4th 141, 148–49 (1st Cir. 2021); *United States v. Tjaden*, 473 F.3d 877, 879–80 (8th Cir. 2007).

Here, Lopez appears to have engaged in more illegal drug trafficking activity while in pretrial custody at Cibola County. *See* **Doc. 104 at ¶ 47**; *see also* **Doc. 100 at ¶ 29c**. Because of this, the Court could have—*sua sponte*—rejected the recommendation that Lopez receive a three-point reduction for acceptance of responsibility. After all, a sentencing judge "is in a unique position to evaluate a defendant's acceptance of responsibility." USSG § 3E1.1 n.5.

But that isn't what happened. The Court applied the three-point reduction for acceptance. At the same time, the Court noted that Lopez's behavior in custody and out of custody are equally troubling. *Cf. supra* ¶ III.A.2. He is one of the unique criminal defendants capable of accruing new charges both outside **and** inside of a correctional facility. *See* **Doc. 104 at ¶¶ 41 & 47**.

Simply stated, Lopez's drug trafficking activity while he was in pretrial detention could have: (1) resulted in the loss of the three level reduction for acceptance of responsibility in the calculation of his total offense level, (2) resulted in a sentence on the high end of the Guideline range (480 months), or (3) resulted in a sentence constituting an upward variance from the 480-month high end Guideline sentence. The Court did not choose any of these options for the simple reason that a 360-month sentence was sufficient but not greater than necessary to satisfy the goals of sentencing. That said, Lopez's drug trafficking activity while in pretrial detention pretty much killed any credible argument he advanced for a sentence varying downward from the 360-month low end Guideline sentence the Court imposed.

### C. Plea Agreement

The plea agreement in this case clearly states: "The Defendant agrees that the Court may rely on any of these facts, as well as facts in the presentence report, to determine the Defendant's sentence, including, but not limited to, the advisory guideline offense level." **Doc. 100 at ¶ 8**. Despite this, defense counsel questioned the propriety of the Court's reliance on the plea agreement at sentencing. *See* **Sent'g Hrg. Tr.**

Facts admitted in a plea agreement can be considered at sentencing. *See United States v. Glover*, 413 F.3d 1206, 1208 (10th Cir. 2005). By signing a plea agreement, a criminal defendant acknowledges that the parties' stipulations are not binding on the Court. *See United States v. Silva*, 2022 U.S. App. LEXIS 3699, at *6 (10th Cir. Feb. 10, 2022) (unpublished). Moreover, a court can

rely on the facts in the plea agreement and the PSR when determining the appropriate Guidelines range. *See United States v. Martinez*, 803 F. App'x 203, 205 (10th Cir. 2020) (unpublished).

That's what happened here.

### D. Substantive Reasonableness

After oral pronouncement of the sentence—and much to the bewilderment of the Court—defense counsel commented that "[this] kind of sentence usually comes with a dead body."[9] **Sent'g Hrg. Tr.** The Court feels compelled to push back.

Upon review, appellate courts presume a sentence is reasonable if it fell within-Guidelines. *See United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006); *see also United States v. Craig*, 808 F.3d 1249, 1261 (10th Cir. 2015) ("within-Guidelines sentence[s] [are] entitled to a presumption of substantive reasonableness."). "Substantive reasonableness involves whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Pena*, 963 F.3d 1016, 1024 (10th Cir. 2020) (quoting *United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007)). Yet a sentencing court is "not required to consider individually each factor listed in § 3553(a), nor is it required to recite any magic words." *United States v. Cordova*, 461 F.3d 1184, 1189 (10th Cir. 2006). *See also United States v. McNeal*, 102 F.4th 708, 710 (5th Cir. 2024) (Oldham, J.) ("Requiring the district court to . . . say[] the magic words for a Potteresque incantation, would turn sentencing into a hypertechnical exercise of empty formalism.").

The Court (1) entertained Lopez's argument for a downward variance and/or departure, (2) considered the § 3553(a) sentencing factors, (3) calculated the advisory sentencing range, and (4)

---

[9] Substantive reasonableness focuses on "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009). As such, the Court construes defense counsel's statement about the length of the sentence imposed as rooted in substantive reasonableness.

concluded that a within-Guidelines sentence was appropriate. *See United States v. Nunez-Carranza*, 83 F.4th 1213, 1222 (10th Cir. 2023). At sentencing, the Court carefully and thoroughly discussed the § 3553(a) factors.[10] Thus, the resulting sentence was not arbitrary, capricious, or whimsical. Even though Lopez—through counsel—disagrees with this Court about the seriousness of his conduct, this does not make his sentence substantively unreasonable. *Cf. supra* ¶ III.A.3.

* * * * *

Lopez's correctly calculated advisory Guidelines sentencing range is 360 to 480 months—based on a total offense level of 39 and a criminal history category of IV.

The Court denied Lopez's request for a downward variance. *Sells*, 541 F.3d at 1238. The Court also declined Lopez's invitation to exercise discretion and depart downward. *See United States v. Fortier*, 180 F.3d 1217, 1231 (10th Cir. 1999); *see also United States v. Dawson*, 90 F.4th 1286, 1292 (10th Cir. 2024). At the same time, though, the Court did not increase Lopez's sentence. No upward variance or departure was imposed. Rather, the Court: (1) overruled Lopez's objections, (2) determined Probation correctly calculated his advisory Guidelines range, and (3) imposed a sentence at the low-end of the applicable range. This case—and this criminal defendant—merited a within-Guidelines sentence. *See United States v. Pinson*, 542 F.3d 822, 838 (10th Cir. 2008) (noting a district court has "wide discretion in choosing the factors" to consider during sentencing); *United States v. Huckins*, 529 F.3d 1312, 1319 (10th Cir. 2008) (Kelly, J.) ("District courts should consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the

---

[10] To be clear, at the sentencing hearing the Court discussed: (1) the nature and circumstances of the offense, (2) the history and characteristics of Lopez, (3) the seriousness of the offense, (4) affording adequate deterrence, (5) protecting the public, (6) providing Lopez with treatment, (7) the policy considerations, (8) restitution, and (9) sentencing disparities. *See* **Sent'g Hrg. Tr.**

punishment to ensue." (cleaned up)). Stated differently, a below-Guidelines sentence for Lopez was not sufficient to satisfy the goals of sentencing as outlined by Congress in § 3553(a).

## CONCLUSION

**IT IS THEREFORE ORDERED** that Lopez's legal objections to the PSR are **OVERRULED**. His factual objections are **SUSTAINED in part**—as to in paragraphs 34, 50, and 68—and **OVERRULED in part**—as to paragraph 13. Based on a total offense level of 39 and a criminal history category of IV, Lopez's correctly calculated advisory Guidelines sentencing range is 360–480 months.

**IT IS FURTHER ORDERED** that Lopez is adjudicated guilty of possession with the intent to distribute 40 grams and more of a mixture and substance containing fentanyl as charged in Count 1 of the Information (**Doc. 98**) charging a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

**IT IS FINALLY ORDERED** that Lopez is committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of 360 months.

/s/

_____
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE